### 23565. ADESIDE v. THE STATE.

ARGUED JULY 13, 1966—DECIDED SEPTEMBER 9, 1966.

*Joe Salem,* for appellant.

*Lewis R. Slaton, Solicitor General, Jess H. Watson, J. Walter LeCraw, Amber W. Anderson, Arthur K. Bolton, Attorney General, Rubye G. Jackson, Assistant Attorney General,* for appellee.

MOBLEY, Justice. The appellant, Henry Adeside, and one Early Thomas were jointly indicted in Fulton Superior Court charging that they did unlawfully and with malice aforethought kill and murder James Jackson, Jr. by shooting him with a pistol. The defendants were tried separately, and appellant was convicted of murder with recommendation of mercy and

sentenced to life imprisonment. The appellant filed a motion for new trial on the general grounds and several special grounds. To the judgment of the trial court overruling his motion for new trial, as amended, he filed notice of appeal, and in due time filed an enumeration of errors to the overruling of his motion for new trial, on the general and special grounds.

■ The general grounds are without merit, as the evidence amply supports the verdict. There was evidence that at about 4 a.m. Sunday morning, September 24, 1965, two men got into the taxicab being operated that night by the deceased, James Jackson, Jr. and that the cab drove north from where it was parked on Ashby Street. Jackson was next seen about 4:15 on Kerry Place in Atlanta on the sidewalk or ground in a struggle with two men. Several shots were heard by nearby residents, who looked out and saw two men running from the scene and the deceased lying on the ground. A police officer arrived about 4:15 and found Jackson lying on the ground there on Kerry Place, having been shot in the chest. He told the officer "they robbed me." He was dead upon arrival at the hospital. Witnesses testified that the cab rolled across the curb and into a utility pole, and an officer testified that there were skid marks or tire markings for about 10 feet where the left front wheel had apparently skidded, and then about 25 feet further "the automobile came to rest against a utility pole." The curb which the car jumped was six inches to eight inches high. Two men were seen running from the scene, after the firing of a number of shots, and got into a parked car and drove away. One of the witnesses gave a description of the car and rode around with the officers until they located the car, which they later learned belonged to Early Thomas, the co-defendant. Thomas reported to police the next morning that he was robbed and shot the night before, but upon questioning admitted that he and Adeside had been at the scene of the shooting of Jackson and he testified that he happened to be out there, that Adeside called to him to borrow some cab money, that the deceased came out of the cab with his pistol in his hand, so he grabbed it and he and the cab driver struggled on the ground, the pistol was shot several times, he got shot and got up and ran to his car, that he did not shoot the

cab driver and that either he shot himself or Adeside shot him. Adeside carried the pistol to his brother-in-law's house and left it.

This is not a case, as appellant's counsel contends, of a conviction based on circumstantial evidence, requiring evidence sufficient to exclude every reasonable hypothesis save the guilt of the accused. There is direct evidence that the deceased was shot while in a scuffle with Thomas and the defendant, and that they ran from the scene leaving Jackson mortally wounded. The deceased's statement that "they robbed me" is evidence that they did rob him. The fact that he had $46 on his person after his death, which is about the amount he would normally have had at that time of night, could have caused the jury to believe that the defendant and Thomas were riding in the cab with him, tried to rob him, during which they got out of the cab onto the ground and the cab kept rolling until it came to rest some 25 feet away against a telephone pole, that there was a struggle with cries for "help" and "don't kill me" during which he was killed, and that they left without getting the money. The flight and concealment by both until their identity was established by the detectives could be considered as circumstances of guilt along with the other facts. *Barnett v. State*, 136 Ga. 65 (3) (70 SE 868).

The general grounds of the motion are without merit.

■ The special grounds complain first, that the theory of justifiable homicide as set out in *Code* §§ 26-1011, 26-1012, and 26-1014 should have been given as the evidence showed that if the defendant did commit the homicide or was part of a conspiracy to commit a homicide, that it was in self-defense. Second, that the court's only reference to justifiable homicide as codified in *Code* §§ 26-1011, 26-1012, and 26-1014 was in a negative and incomplete manner and given in such a manner as to be confusing and misleading to the jury, in that it incorporated the principle of justifiable homicide as set forth in *Code* § 26-1014. The complaints are without merit. The court after charging the law on presumption of innocence, reasonable doubt, on misfortune or accident, on conspiracy, flight, definition of murder and malice, definition of manslaughter and on volun-

tary manslaughter, charged that if the jury believed beyond a reasonable doubt that the defendant did kill James Jackson, Jr. by shooting him with a pistol "that at the time of the killing the defendant was in no danger from the person killed, that the person killed was not committing or attempting to commit a serious personal injury on the person of the defendant, and that the circumstances surrounding the killing were not sufficient to justify the belief that the deceased intended, endeavored or was about to commit a serious injury on the person of the defendant, but that the killing was intentional, unlawful, with malice aforethought and without justification or mitigation as charged, then and in that event the jury would be authorized to find the defendant guilty of the offense of murder." This charge was correct, adjusted to the facts in this case, and not subject to the complaint of appellant.

■ The charge on malice, that: "The law presumes that every homicide is malicious until the contrary appears from the circumstances of alleviation, excuse or justification; and it is incumbent upon the prisoner to make out such circumstances to the satisfaction of the jury unless they appear from evidence produced against him, provided a deadly weapon was intentionally used in a deadly and unlawful manner and causing the homicide," was not error, as the evidence relied upon by the State to establish the fact of the homicide did not, as contended by appellant, disclose circumstances of mitigation and justification, which would thus not raise a presumption of malice. The charge was sound and has been so held by this court. *King v. State*, 210 Ga. 92 (6) (78 SE2d 20); *Smith v. State*, 203 Ga. 317 (46 SE2d 583).

■ Appellant excepts to the following charge: "In other words, murder is the intentional killing of a human being or the killing of a human being by the intentional use of a weapon, that, as used, is likely to kill, and a killing without justification or mitigation," on the ground that it is not adapted to the facts, was confusing and misleading in absence of a charge on mitigation and justification as set out in Code sections on mitigation and justification and did not embrace accident and misfortune. The charge is obviously not subject to any of these complaints.

460

It was proper for the court to give to the jury a definition of murder. If more detailed instructions were desired, the appellant should have requested same, and, in the absence of such, nothing additional was required.

*Judgment affirmed.   All the Justices concur.*